UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CIVIL N0. 12-565-HJW-JGW

UNUM LIFE INS. CO. OF AMERICA                                    PLAINTIFF

v.

DOROTHY L. SMITH                                                 DEFENDANT


REPORT AND RECOMMENDATIONS
and
ORDER

Pending before the Court are a host of motions filed by both parties.  Defendant/ counterclaimant Dorothy L. Smith ("Smith") filed a motion for judgment on the administrative record (Doc. 30), which plaintiff Unum Life Insurance Company of America ("Unum") opposed (Doc. 32).  In turn, Unum filed its own motion for judgment on the administrative record (Doc. 31), which Smith opposed (Doc. 34).  Smith has also filed a motion to compel (Doc. 26).  Subsequent to that filing, however, Unum provided the documents at issue, leading Smith to file a motion to withdraw in part the motion to compel, though she continued to seek sanctions against Unum.  (Doc. 27).  Unum opposed the request for sanctions (Doc. 28) and Smith filed a reply brief in support of it (Doc. 29).  Finally, Unum filed a motion to strike evidence outside of the administrative record (Doc. 33), to which Smith submitted a response (Doc. 35) and Unum a reply (Doc. 36).  All of the motions are ripe for decision.

## I.  Facts and Procedural Posture

Smith worked at Bethesda Hospital from 1971 until 2003, when she became disabled with severe pain and weakness in both arms and wrists.  Doc. 24 at 236-37.  As an employee of

1

Bethesda, Inc., a division of Catholic Health Initiative, Smith possessed long-term disability ("LTD") coverage through Unum under Group Policy No. 1572681. *Id.* at 2. After she exhausted her total temporary disability payments, Smith submitted a claim on or about October 1, 2004, to Unum for LTD benefits under the policy. *Id.* at 48-49. On December 14, 2004, Unum approved the claim. *Id.* at 307-310. Smith received retroactive payments totaling $10,318.46 and $1,622.40 in monthly disability payments thereafter. *Id.* at 307, 378.

The policy, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), permits Unum to offset any LTD payments against a beneficiary's receipt of certain "deductible sources of income." "Deductible sources of income" include money received under, among other things, workers' compensation laws or "[t]he amount that you . . . are entitled to receive as disability payments because of your disability under: the United States Social Security Act." Doc. 24 at 137. With that provision in mind, Unum offered to assist Smith, through its wholly-owned subsidiary, in applying for Social Security Disability Insurance ("SSDI") benefits. Smith agreed and submitted a claim to the Social Security Administration ("SSA") in September 2005. *Id.* at 373. After several years of denials and appeals, on December 29, 2008, the SSA sent Smith a letter entitled "Notice of Award" acknowledging that her claim was approved. *Id.* at 453-58.

The letter stated that Smith qualified for monthly SSDI benefit payments of $1,308.60 beginning from the onset of her disability in 2004. Doc. 24 at 453, 501. Typically, this would result in a substantial retroactive lump sum award to compensate her for the SSDI benefits she was entitled to but did not receive from the beginning of her disability to the date of award. However, the SSA erroneously believed Smith had been receiving a weekly $644 workers'

compensation payment during this period, which the agency uses to offset its own disability benefit payments. *Id*. at 454. As a result, the SSA believed Smith's SSDI payments were zeroed out, completely offset by her much higher workers' compensation payments (Smith would only receive a retroactive award of $5,318 and monthly SSDI payments of $158 going forward, all of which were apparently, as Smith maintains, attributable to cost of living adjustments that may not be used to offset her SSDI benefits. Doc. 24 at 453; Doc. 30 at 1). This, however, was a mistake, as Smith did not receive workers' compensation payments during the relevant time period. Doc. 30 at 12.

The SSA did not correct this error until August 2010, some twenty months after originally awarding Smith benefits. During this time, Unum paints a picture of Smith as non-responsive, documenting some twenty-plus mostly-unsuccessful attempts to contact her regarding her SSDI benefits and their impact on her LTD benefit payments. Doc. 31 at 6-10. When contact was made, Unum does admit that Smith informed its representatives that she did not receive and was not receiving her full SSDI benefits because of the workers' compensation misunderstanding. *See* Doc. 24 at 480. Nevertheless, on December 5, 2009, Unum began deducting from her monthly LTD benefit payments the overpayments it considered Smith to have received from either SSDI and/or workers' compensation, deeming them a "deductible source of income" subject to offset. *Id*. at 514. Unum calculated Smith's overpayment using the figures provided in the SSA's "Notice of Award": it multiplied her $1,308 monthly SSDI award by the number of months between her disability onset date (October 1, 2004) and the date of award (October 9, 2009), or sixty months and nine days (60.3), bringing the total overpayment to $78,872.40. *Id*. at 501. Unum began recouping this alleged overpayment by deducting from her

3

$1,622.40 monthly LTD benefit payment the entire amount of her $1,308 monthly SSDI, leaving Smith a monthly LTD payment of only $314.40. *Id*. at 499.

Following its reduction of Smith's benefits, Unum continued to insist on being repaid, while Smith continued to protest the overpayment. *See* Doc. 32 at 9-10. In December 2009, Smith alleges she did begin receiving $1,467[1] in monthly SSDI benefits, as the SSA seemed to begin to correct its mistake regarding the workers' compensation offset. Doc. 30 at 12. In August 2010, the SSA formally acknowledged its mistake and awarded Smith a retroactive payment of $40,574.[2] Doc. 30 at 12.

In March 2010, Unum, citing plan language, required Smith to provide documentation of continuing disability to reaffirm her qualifications for LTD benefits. Doc. 24 at 566-67, 574-75. Smith eventually responded (*Id*. at 589), though Unum terms her response only "partially completed." Doc. 32 at 10. Unum continued to seek documentation from Smith for nearly two years, through 2011, without much success. In August 2011, Unum discovered that Smith may have been involved in a real estate venture, which could disqualify her from receiving LTD benefits. *See* Doc. 24 at 696-702. Unum demanded information related to this venture, in addition to the previously-sought documentation, and warned Smith that her benefits would be terminated if it was not received within thirty days. *Id*. On December 20, 2011, after receiving

---

[1]This monthly SSDI award appears to be higher than the $1,308.60 amount stated in Smith's "Notice of Award" from the year prior because a $158 cost of living adjustment was applied for 2009. *See* Doc. 24 at 453; Doc. 30 at 1.

[2]It is unclear why this retroactive payment does not match the amount the SSA explained she was entitled to in the "Notice of Award." *See* Doc. 24 at 453. Smith never appealed this decision, however, and how the SSA arrived at that calculation has never been explained. *See* Doc. 30 at 12, n. 7.

no response from Smith, Unum notified Smith of its decision to terminate her benefits for failing to provide the requested information. *Id*. at 717-723. The correspondence cited the relevant policy provisions, including Smith's right to appeal the decision within 180 days. *Id*. Smith did not do so.

On July 25, 2012, Unum filed this suit to recover the alleged overpayment, estimated to be $70,897.60 (after the offset). Doc. 1; Doc. 31 at 1. Unum argues that the policy expressly allows for recovery of the alleged overpayment. Smith filed a counterclaim alleging that Unum grossly and fraudulently miscalculated Smith's alleged overpayment, improperly expropriated some $8,000 of Smith's LTD benefits to pay for what it knew as an incorrect overpayment, and wrongfully cancelled her LTD benefits. Doc. 13. Smith seeks an equitable declaration: (1) that Unum violated the policy and ERISA by miscalculating the overpayment and terminating her benefits, and (2) that Smith should continue to receive LTD benefits under the policy. *Id*. Smith also seeks attorney's fees, costs, and interest due to Unum's alleged bad faith. *Id*. She further argues that Unum's bad faith, derived from its knowledge that Smith never received the alleged overpayment, precludes Unum from recovering any overpayment Smith did eventually receive. Doc. 30 at 1. Unum seeks dismissal of Smith's counterclaim, arguing that it fails both procedurally and on the merits. Doc. 31.

## II.  Legal Framework

Courts generally perform a de novo review of an administrator's interpretation of an ERISA-governed plan or decision to deny benefits. However, when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility of benefits or to construe the terms of the plan," courts are to employ the significantly more deferential "arbitrary

5

and capricious" standard of review. *McCartha v. National City Corp.*, 419 F.3d 437, 441 (6th Cir. 2005) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). Because the plan at issue contains the standard language granting such discretionary authority to the administrator[3], the arbitrary and capricious standard applies.

      The arbitrary and capricious "standard is the least demanding form of judicial review of an administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious. Consequently, a decision will be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (internal quotation and citation omitted). Nevertheless, such standard does not turn courts into a rubber stamp, as the review "is not, however, without some teeth." *Id.* (internal quotation omitted). Moreover, "because Unum operates the Plan as both the administrator determining which claims are covered and the insurer responsible for paying those claims, there is a readily apparent conflict of interest. This inherent conflict does not alter the standard of review, but must be weighed as a factor in determining whether the decision was arbitrary and capricious." *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 Fed. Appx. 38, 40 (6th Cir. 2007) (citations omitted). Finally, the Court's review is limited to the evidence that was actually before the plan administrator when he or she made the decision below. *Wilkins v. Baptist Healthcare System,*

---

[3]The plan expressly states, in the fifth paragraph of the Certificate Section, "When making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." Doc. 24 at 130. The Sixth Circuit has deemed this exact language sufficient to trigger arbitrary and capricious review. *See Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 n. 4 (6th Cir. 2006).

*Inc.*, 150 F.3d 609 (6th Cir. 1998).

Both parties invoke 29 U.S.C. § 1132(a)(3) as the basis for their claims. That statute states, "A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

### III. Unum's Motion to Strike Evidence Outside the Administrative Record

Before getting to the merits, the Court will address Unum's motion to strike evidence outside the administrative record. Doc. 33. Unum seeks to strike three types of evidence: (1) exhibits Smith attached to her motion for judgment on the administrative record (Doc. 30); (2) court opinions cited by Smith that presume to show a pattern of bad acts by Unum and resulting judicial admonishment (Doc. 30 at 15); and (3) Smith's statement in her motion that she "was not receiving workers' compensation benefits at that time," (Doc. 30 at 15). Doc. 33 at 1-2.

In response, Smith argues that the statement in her motion that she was not receiving workers' compensation is supported by evidence in the administrative record and asserts that Unum only seeks to strike it because the company is now arguing that the alleged overpayment is the same whether Smith received SSDI or workers' compensation. Doc. 35 at 7. Smith also argues that her citation to caselaw is not evidence outside the administrative record and cannot be stricken. *Id*. at 6. The Court agrees on both grounds and to that extent, Unum's motion will be denied.

The exhibits are a more difficult matter. Upon review, it is apparent that at least some of the exhibits would have been important to both parties in fairly presenting the issues for

decision.[4]  Nevertheless, Sixth Circuit precedent is clear, and both parties acknowledge that this Court may only consider evidence that was presented to the plan administrator.  *Wilkins*, 150 F.3d 609.

In her response in opposition, however, Smith makes the point that if her exhibits are to be disregarded as outside evidence, they may not be used by Unum either.  Doc. 35 at 5.  This is particularly important because Smith asserts that her August 2010 lump sum, retroactive benefit award (which totaled $40,574 and corrected the Agency's mistaken belief that Smith was receiving workers' compensation) was not presented to the administrator and should therefore not be subjected to this Court's analysis.  Doc. 35 at 6.  She writes, "this Court should treat Smith's August 2010 award as if it does not exist because there is no reference to it anywhere in the administrative record.  Accordingly . . . Unum's overpayment calculation must be judged solely on the circumstances in existence in October 2009 when it erroneously calculated Smith's overpayment."  *Id*.  This perverse outcome is correct, as the Court is limited to reviewing the administrative record in reaching its decision.

Therefore, because the exhibits attached to Smith's motion (Doc. 30, Exs. A-H) are not

---

[4]The exhibits include: a letter and spreadsheet identifying all payments Smith received from workers' compensation for a previous, unrelated injury, which seems to confirm she was not receiving workers' compensation during the time period relevant to this lawsuit (Doc. 30 at Exs. A and B); a letter and decision from the SSA granting Smith SSDI benefits, dated December 5, 2008 (*Id*. at Ex. C); a cost of living calculation showing from where the $5,318.60 SSDI award derived (*Id*. at Ex. D); a letter from the SSA outlining Smith's benefits, which Smith requested (*Id*. at Ex. E); an August 15, 2010, letter from the SSA outlining the $40,574 lump sum award Smith will be receiving, which includes the statement, "Since you did not receive any workers' compensation payments from October 2004 through February 2007 full benefits are payable for all months.  We are taking action to pay the benefits that were incorrectly held for those months." (*Id*. at Ex. F); a check denoting partial payment of the lump sum award, as well as a document outlining Smith's attorney's fees (*Id*. at Ex. G); and an affidavit executed by Smith (*Id*. at Ex. H).

part of the administrative record, they are stricken. To that extent, Unum's motion will be granted.

### IV. The Parties' Dispositive Motions

The Court faces several interdependent issues. Unum's motion for judgment on the administrative recordasks the Court to impose an equitable lien or constructive trust against Smith in the amount of the alleged outstanding overpayment (Unum also seeks attorney's fees, costs, and interest). Smith not only opposes the motion, she asks the Court in her own dispositive motion to determine that Unum's overpayment calculation was done in bad faith, which, under the unclean hands doctrine, bars Unum from recovering any overpayment Smith actually did receive. In the alternative, even absent a showing of bad faith, Smith asks the Court to determine that it would be inequitable to permit Unum to collect any overpayment. Smith also requests that the Court order Unum to reimburse her for LTD benefits it withheld in order to recoup the alleged overpayment and to reinstate her LTD benefits (Smith too seeks attorney's fees, costs, and interest).

### a. Unum's Motion for Judgment on the Administrative Record

In support of its motion for judgment on the administrative record, Unum details the plan provisions related to the purported overpayment and argues that it complied with them at all times. As a plan fiduciary, Unum is authorized under 29 U.S.C. § 1132(a)(3) to bring a claim for equitable relief to enforce the terms of the plan. The Sixth Circuit has held that this provision permits a fiduciary to seek the imposition of a constructive trust or equitable lien in order to recover overpayments resulting from a participant's receipt of Social Security benefits, not to exceed the LTD benefits paid. *Gilchrest v. Unum Life Ins. Co. of America*, 255 Fed. Appx. 38,

45-46 (6th Cir. 2007); *Hall v. Liberty Life Assur. Co. of Boston*, 595 F.3d 270, 275 (6th Cir. 2010).

Under the terms of the plan, Unum was permitted to subtract from its monthly benefit payment to Smith any deductible sources of income she received, including SSDI and workers' compensation payments. Doc. 24 at 136-37. The plan actually permits Unum to make a determination that Smith qualifies for deductible sources of income before she has even applied for SSDI. Unum made this determination upon granting her LTD benefits. *Id.* at 138. At that point, the plan gave Unum the right to "estimate your entitlement . . . [and] . . . reduce your payment by the estimated amounts." *Id.* However, the plan states that Unum would refrain from doing so if Smith agreed to the following three conditions: (1) she must apply for the deductible sources benefits; (2) appeal any "denial to all administrative level Unum feels are necessary;" and (3) agree to pay Unum any overpayment that results from the benefit award. *Id.* at 138-139. Smith did. In satisfying the third condition, Smith executed a "Disability Payment Options/Reimbursement Agreement" wherein she elected to continue receiving her full LTD benefit payments until a final determination on her eligibility for SSDI was made by the SSA. *Id.* at 389. The agreement advised Smith that her election may result in an overpayment and obligated her to reimburse Unum for any such overpayment within thirty days of "receiving" any deductible sources of income. *Id.* Finally, the plan states that if Smith's LTD payment were reduced by the estimated amount of her deductible sources benefits, "your payment will be adjusted when we receive proof of the amount awarded." *Id.* at 138-139.

Unum argues that its actions in seeking repayment of the alleged overpayment were entirely in accord with the plan provisions and perfectly legal under ERISA. When Smith was

approved for SSDI benefits, Unum argues it merely sought to be repaid for the consequent overpayment. When Smith stopped cooperating, Unum maintains it was left with no choice but to use the information it had from the SSA regarding Smith's SSDI and/or workers' compensation payments and seek to recoup the overpayment it had evidence to believe existed. Without Smith's cooperation, Unum could not determine the precise amount of the overpayment and was forced to estimate it, arriving at a total of $78,872.40. Doc. 24 at 501. At this point in October 2009, Unum was still making LTD payments to Smith, so it began to recoup the overpayment by deducting the purported amount of her monthly SSDI payment from her monthly LTD payment, reducing her LTD payment to $314.40 per month. *Id*. at 499. Over the next two years, Unum maintains that Smith continued to be uncooperative and failed to abide by her obligations under the plan. As a result, Unum terminated Smith's benefits and filed this suit to recover the remaining amount of the overpayment. *Id*. at 711-717. Unum maintains that all of its actions were permitted by the plan and ERISA.

      In opposing Unum's motion, Smith counters that the evidence in the administrative record belies Unum's claim for repayment. Smith points to evidence showing that she never received $78,872.40 in either SSDI or workers' compensation. In addition, she cites evidence in the record showing that Unum knew this to be the case, yet still sought to recoup this "overpayment." Doc. 34 at 1; Doc. 24 at 507. In one documented instance, Unum's notes reveal that a conference call "confirmed" that the only payments Smith received from the SSA at the time Unum sought repayment were related to cost of living adjustments, which are not considered deductible sources of income and which the plan is not permitted to recover. Doc. 24 at 507, 138. When an Unum employee asked her apparent superior how she should calculate the

11

overpayment, he instructed, "Calculate [overpayment] based on full rate of entitlement," even though the note states that the SSA was reviewing its award in light of Smith's contention that she was not receiving workers' compensation. *Id*. at 507.  Smith cites other evidence of Unum's knowledge that she had not received either SSDI or workers' compensation benefits that would create an overpayment. *See Id*. at 468; 553.  Furthermore, Smith argues that Unum made its calculation prior to seeking any of the information it alleges Smith was unwilling to provide - tax returns and workers' compensation documents and the like - as Unum did not ask for these documents until after it had calculated the overpayment on October 23, 2009.  Doc. 34 at 7; Doc. 24 at 501, 451-499.

The evidence Smith identifies in the administrative record tends to show that Unum's interpretation of the plan and attempts to recover $78,872.40 for overpayments due to Smith's SSDI and/or workers' compensation benefits were not the result of a principled reasoning process and not supported by substantial evidence.  While the record is not entirely clear, evidence reveals that Unum was aware that Smith had not received the benefits that would have created an overpayment, yet Unum began to collect the overpayment which it did not know even existed.  Unum's argument that it was simply using the information in its possession is contradicted by its own notes, which document that it had information that Smith never received $78,872.40 in SSDI or workers' compensation benefits.  Furthermore, while the policy itself provides that Smith need only "receive or be entitled to" SSDI or workers' compensation (Doc. 24 at 136-37), the repayment agreement Smith signed is narrower, obligating her "to repay any overpayment incurred as a result of *receiving* any [deductible sources of income]." *Id*. at 389 (emphasis added).  Unum pointed to no evidence in the record that Smith actually received any

deductible sources of income at the time it imposed the overpayment and began reducing her LTD benefits.  Its assertion that it lacked such evidence because of Smith's own failure to provide it, as required by the plan, is contradicted by the time line put forth by Smith, which shows that Unum calculated the overpayment prior to asking for the documentation.  For these reasons, it is recommended that Unum's motion for judgment on the administrative record be denied.

As a remedy, the Court recommends remand to the administrator with instructions to conduct a full and fair review of Smith's LTD claims and Unum's right to repayment for Smith's receipt of deductible sources of income.  *See Elliot v. Metropolitan Life Ins. Co.*, 473 F.3d 613 (6th Cir. 2006).  Because the facts of the case have not been fully presented, remand will afford the administrator a more thorough record - which will likely include the evidence submitted by Smith that the Court did not review - upon which to reach a decision.

### b.  Smith's Motion for Judgment on the Administrative Record

Since Smith's claims relate to the very matters this Court recommends be remanded to the administrator, it follows that her motion for judgment on the administrative record should also be denied.  It would be premature for this Court to determine, based on equitable principles, whether Smith should have to repay any overpayment or whether her LTD benefits should be reinstated, without first providing the administrator an opportunity to determine whether any overpayment is actually due or whether restoration of Smith's LTD benefits is in order.  This is particularly so in light of the evidence Unum points to in the record tending to show Smith may have failed to uphold all of her obligations under the plan.  *See* Doc. 32 at 6-14.

### V.  Smith's Motion for Expenses for Filing a Motion to Compel

Smith's motion for expenses related to her motion to compel grows out of a discovery dispute that has since been resolved. Doc. 27. Smith relates that she filed a motion to compel certain documents after Unum refused to produce them in discovery. Shortly thereafter, Unum produced the documents, leading Smith to move to withdraw her motion to compel. Although the substance of the motion is moot, Smith still seeks sanctions under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure for her expenses incurred in filing the motion to compel.

Rule 37(a)(5)(A) states,

> If the motion [to compel] is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

In response, Unum argues that it was justified in initially withholding production, that it voluntarily produced the documents prior to learning of Smith's motion to compel and only three hours after it was filed, and that Smith was hasty in seeking the Court's intervention. Doc. 28 at 1-2. The Court agrees. Unum's initial refusal to produce the documents was substantially justified for the reasons stated in its brief, including the uncertain status of Sixth Circuit precedent regarding the fiduciary exception in the ERISA context. *Id.* at 2. In addition, Unum's prompt production of the documents following Smith's demand and without knowing of her motion to compel (*see Id.*) militates against awarding expenses. Therefore, Smith's motion for expenses will be denied.

### VI. The Parties' Requests for Fees, Costs and Interest

14

Both parties seek an award of fees and interest. An award of fees, costs, and/or interest in ERISA cases is discretionary. 29 U.S.C. § 1132(g); *Drennan v. Gen. Motors Corp.*, 977 F.2d 246 (6th Cir. 1992); *Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). As the Court recommends denial of both parties' dispositive motions, neither shall be awarded fees, costs, or interest.

### VII. Conclusion

For the reasons stated above, accordingly,

**IT IS RECOMMENDED:**

(1) Plaintiff's motion for judgment on the administrative record [Doc. 31] should be **DENIED**;

(2) Defendant's motion for judgment on the administrative record [Doc. 30] should be **DENIED**;

(3) The matter should be **REMANDED** to the administrator for a full and fair review of defendant's long term disability claims and plaintiff's right to repayment for defendant's receipt of deductible sources of income, as well as any other related claims.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or

objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

**IT IS ORDERED:**

(1) Plaintiff's motion to strike evidence outside the administrative record [Doc. 33] is **GRANTED IN PART**, with regard to the exhibits attached to defendant's motion for judgment on the administrative record [Doc. 30, Exs. A-H]; and **DENIED IN PART**, with regard to the court opinions cited by defendant [Doc. 30 at 15] and defendant's statement in her motion denying that she received workers' compensation at the relevant time period [Doc. 30 at 15];

(2) Defendant's motion to withdraw [Doc. 27] is **GRANTED IN PART**, to the extent that defendant seeks to withdraw its motion to compel [Doc. 26], and **DENIED IN PART** to the extent that defendant seeks sanctions under Rule 37;

(3) Defendant's motion to compel [Doc. 26] is **DENIED** as moot.

This, the 12th of August, 2013.                s/ J. Gregory Wehrman
                                                Judge J. Gregory Wehrman
                                                United States Magistrate Judge